UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY J. CARROLL, | |
| Plaintiff, | |
| | Hon. Joseph E. Irenas |
| v. | |
| | Civil Action 13-cv-02833 |
| DELAWARE RIVER PORT AUTHORITY, | |
| | **OPINION** |
| Defendant. | |

**APPEARANCES:**

MATTHEW S. WOLF, ESQUIRE, LLC
By: Matthew S. Wolf, Esq.
1236 Brace Road
B. 2nd Floor
Cherry Hill, New Jersey 08034
    Counsel for Plaintiff

DEASEY, MAHONEY, VALENTINI, & NORTH LTD
By: Carla P. Maresca, Esq.
80 Tanner Street
Haddonfield, New Jersey 08033
    Counsel for Defendant

**IRENAS**, Senior United States District Judge:

This matter comes before the Court on Plaintiff Anthony Carroll's Motion for Partial Summary Judgment against Defendant Delaware River Port Authority ("DRPA"). Plaintiff claims he was discriminated against based on his military service, in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311(a) ("USERRA"), when he was not

1

given the opportunity to apply for a promotion in 2003 and not offered a promotion in 2010 and 2012. The denial of the 2012 promotion is the only claim at issue in this motion.[1] For the reasons stated below, the motion will be denied.[2]

### I.

For the purpose of this motion, the Court resolves factual disputes in favor of Defendant, the non-movant.[3]

In August 1989, Plaintiff began his employment as a police officer with the DRPA. (PSMF[4] ¶ 1; Carroll Decl. ¶ 1.) In late

---

[1] Plaintiff moves for summary judgment before the close of discovery; the factual discovery deadline is currently August 29, 2014. (Amended Scheduling Order of June 18, 2014, Docket #40) Defendant has stated that it intends to file a summary judgment motion after the conclusion of discovery.

[2] Also before the Court is Plaintiff's Motion to Strike Defendant's sur-reply brief filed in connection with the Motion, and Defendant's cross-motion for "leave to file sur-reply *nunc pro tunc*." "No sur-replies are permitted without permission of the Judge . . . to whom the case is assigned." L. Civ. R. 7.1(d)(6). Defendant failed to ask for, much less receive, permission to file a sur-reply prior to filing the sur-reply. Moreover, the Court concludes that Defendant has not demonstrated good cause for "*nunc pro tunc*" permission. Accordingly, Plaintiff's Motion to Strike the sur-reply will be granted and Defendant's cross-motion will be denied.

[3] See *infra*, Section II.

[4] PSMF refers to Plaintiff's Statement of Material Facts in Support of the Motion for Partial Summary Judgment. DRSF refers to Defendant's Response to Plaintiff's Statement of Facts. DSMF refers to Defendant's Additional Facts Relevant to Plaintiff's Motion for Partial Summary Judgment. PRSF refers to Plaintiff's

2

2012, Plaintiff applied for a promotion to the position of Sergeant with the DRPA. (PSMF ¶ 13; Carroll Decl. ¶ 8.) Plaintiff was not selected for the 2012 promotion. (PSMF ¶ 26; Carroll Decl. ¶ 10.)

There were two vacancies for the position of Sergeant. (PSMF ¶ 15.) To qualify for the position, there are a number of physical requirements that must be satisfied. The employee must be able to lift, bend, crawl, climb stairs and ladders, and carry objects over one hundred pounds, among other physical capabilities. (Plaintiff's Exh. B (DRPA 01623-24).) The employee must also have normal vision and normal hearing, corrected or uncorrected. (Plaintiff's Exh. B (DRPA 01624).) Further, the employee must pass the Fitness Indicator Test. (Plaintiff's Exh. B (DRPA 01623-24).)

Plaintiff is aware of the physical fitness requirements and admits that, at the time he applied for the promotion in 2012, he was physically unqualified without first receiving reconstructive surgery on his right shoulder. (DSMF ¶ 11; Defendant's Exh. A (Carroll Tr.) at 176:3-6, 177:19-178:1.)

Plaintiff requires reconstructive surgery because of an injury he sustained while on active duty in Iraq in 2009. Plaintiff intermittently served on active duty with the

---

Statement of Material Facts in Response to Defendant's Additional Material Facts.

Pennsylvania National Guard from 1999 to 2008, at which time he was ordered into active duty for service in Iraq. (PSMF ¶ 4; Carroll Decl. ¶ 4.) As a result of his service in the National Guard, Plaintiff suffered cervical spondylosis, degenerative disk disease, high frequency sound loss, and torn rotator cuffs bilateral, among other injuries-- some, if not all, of which he continued to suffer from at the time he was applying for the promotion.[5] [6] (DSMF ¶ 10; Defendant's Exh. A (Carroll Tr.) at 22:10-21, 52:10-25.)

As part of the selection process, candidates were interviewed in November 2012, and a summary of candidate qualifications was prepared to help the decisionmaker, Chief Executive Officer John J. Matheussen ("Matheussen"), determine

---

[5] On November 27, 2013, Plaintiff was discharged from active duty due to his physical injuries. (PSMF ¶ 5; Carroll Decl. ¶ 5; DRSF ¶ 5; Defendant's Exh. A (Carroll Tr.) at 22:8-23:18.) Additionally, Plaintiff is on convalescent leave from the DRPA and receives disability benefits for a total disability. (PSMF ¶ 6; Carroll Decl. ¶ 6; DSMF ¶ 19; Defendant's Exh. A (Carroll Tr.) at 173:1-4.)

[6] Because discovery is ongoing, it is not yet clear which of these injuries the DRPA was aware of during the 2012 promotion process. However, from the summary of Plaintiff's qualifications, it is clear that the DRPA was aware that he sustained serious injuries from his tour in Iraq. (Plaintiff's Exh. B (DRPA 01634).) The summary states: "[Plaintiff] is currently out of the department injured from military leave and has been for four years." (Plaintiff's Exh. B (DRPA 01634).) The summary also states: "[Plaintiff] is currently not on assignment, due to being injured during his tour with the U.S. Military, which occurred over four years ago." (Plaintiff's Exh. B (DRPA 01634).)

4

who would receive the promotions. (PSMF ¶¶ 16, 18; Plaintiff's Exh. B (DRPA 01636).)

In the summary of Plaintiff's qualifications, several references were made to Plaintiff's absence from and inactivity within the department. (Plaintiff's Exh. B (DRPA 01634).) For instance:

- "He is currently out of the department injured from military leave and has been for four years."

- "In responding to questions, he did not answer some questions, due to not being up to date with current policy."

- "[B]eing removed from the department and operational issues for several years, he did seem to answer several questions in a non-specific manner and did state his inability to work did not allow him to be more specific with some of his responses."

- "Corporal Carroll is currently not on assignment, due to being injured during his tour with the U.S. Military, which occurred over four years ago. Due to his inactivity within our department, he does not appear to be a suitable candidate for the sergeant's position at this time."

(Plaintiff's Exh. B (DRPA 01634).)

The interview panel's recommendations were submitted to Chief Jack Stief ("Stief") at the DRPA for review, upon which he had authority to provide input on the suitability of the candidates. (Defendant's Exh. I (Stief Aff.) ¶¶ 15, 16.) Regardless of his injuries and Plaintiff's absence from the department, Stief states he "would have strongly discouraged" promoting Plaintiff "due to the concern over possible criminal

5

charges being filed against him . . . . " (Defendant's Exh. I (Stief Aff.) ¶ 17.)[7]

At the time Plaintiff was seeking a promotion in 2012, Stief knew that the Camden County Prosecutor's Office was considering filing criminal charges against Plaintiff. (Defendant's Exh. I (Stief Aff.) ¶¶ 12, 13.) The possibility of criminal charges stemmed from allegations made by Mariah Smith ("Smith"), which were reported to Stief around July 2012 and subsequently reported to the Camden County Prosecutor's Office.[8] (DSMF ¶¶ 24, 25; Defendant's Exh. I (Stief Aff.) ¶¶ 6, 11.)

Smith reported that, after her husband died, Plaintiff came to her home and represented himself as a DRPA police officer. (Defendant's Exh. I (Stieff Aff.) ¶ 8; Defendant's Exh. J.) However, Plaintiff had not served as a police officer with the DRPA in over three years. (Defendant's Exh. I (Stief Aff.) ¶¶ 9, 10.) Smith also made the following allegations, documented in the Camden County Prosecutor's Office Summary Investigative Report:

- Plaintiff removed one of her husband's guns, allegedly to sell it and provide Smith with money. Plaintiff never gave Smith money or informed her that the gun was sold.

---

[7] Stief had not yet been deposed when briefing on this Motion was completed.

[8] Plaintiff denies all of Smith's allegations. (PRSF ¶ 26.)

6

- Plaintiff carried a backpack full of guns and always carried a gun on him. He also stockpiled prescription medication and purposely obscured his license plates.

- Plaintiff used sex to control her by withholding intimate contact.

- After Plaintiff and Smith began a sexual relationship, Plaintiff obtained a bank account in his name in which she was to deposit insurance money.

- Smith also gave $1,000 to Lisa Nicholas, Plaintiff's spiritual advisor, to perform a house cleansing. Plaintiff had told Smith that he could not have sex with her because her house was not cleansed. Over time, Smith paid Lisa Nicholas approximately $52,000 for psychic services.

(Defendant's Exh. J.)

As stated before, Plaintiff moves for summary judgment on his 2012 failure-to-promote claim.

## II.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of

material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. Id. at 249.

### III.

USERRA provides, in relevant part, that "[a] person who is a member of . . . a uniformed service shall not be denied . . . promotion or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). An employer violates USERRA "if the [plaintiff]'s membership . . . in the uniformed services is a motiving factor in the employer's

8

action, unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c)(1).

A plaintiff alleging discrimination bears the initial burden of demonstrating that the employee's military service was a substantial or motivating factor in the employer's adverse employment action. Murphy v. Radnor Twp., 542 F. App'x 176-77 (3d Cir. 2013) (citing Sheehan v. Dep't of Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001)). "'A motivating factor does not mean that it had to be the sole cause of the employment action.'" Murphy, 542 F. App'x at 177 (quoting Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (11th Cir. 2005)). Military service is "'a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.'" Id.

If a plaintiff satisfies his initial burden, the burden shifts to the employer to prove, as an affirmative defense, "that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service." Murphy, 542 F. App'x at 177 (citing Sheehan, 240 F.3d at 1013); see also Sheehan, 240 F.3d at 1009. This burden is often referred to as a "but-for" test. Sheehan, 240 F.3d at 1013. Accordingly, even if the employer had a discriminatory reason for the adverse employment action, if the employer had an

9

additional lawful reason which alone would have justified the action, the employee's case must fail. Murphy, 542 F. App'x at 177 (quoting Madden v. Rolls Royce Corp., 563 F.3d 636, 638 (7th Cir. 2009)). This burden requires that the employer show "a legitimate reason . . . that is 'so compelling' and 'so meagerly contested' that there is no genuine dispute that [the plaintiff] would not have been hired regardless of his [ ] military obligations." Murphy, 542 F. App'x at 175.

Evidence that an employee "was not trustworthy, did not make good decisions, did not exercise good judgment, and could not work with others" can establish that an employee would have been denied a promotion despite military service. See Landolfi v. City of Melbourne, 515 F. App'x 832, 837 (11th Cir. 2013). Further, evidence that the employee engaged in violence and violated a workplace violence policy can also demonstrate that the plaintiff would have been subject to the same adverse employment action despite his military service. See Coyaso v. Bradley Pac. Aviation, Inc., 2012 WL 1580470, *8 (D. Haw. May 3, 2012).

In this case, the Court need not consider the first prong of the analysis because Defendant points to record evidence raising fact issues precluding summary judgment against it on its affirmative defense.

First, Stief states that he would have strongly discouraged promoting Plaintiff because of the pending criminal investigation by the Camden County Prosecutor. (Defendant's Exh. I (Stief Aff.) ¶ 17.) There is thus a genuine issue of material fact as to how this negative recommendation would have impacted the decisionmaker and accordingly the decision as to whether to select Plaintiff for the promotion. Moreover, there is no dispute that these potential criminal charges had no connection to Plaintiff's military service and thus would be a legitimate reason for Plaintiff's non-selection.

Second, there is also a genuine issue of material fact as to whether Plaintiff would have been denied the promotion regardless of his military service because of his physical limitations at the time. As detailed above, applicants for the Sergeant position must meet significant physical qualifications. Plaintiff concedes that he could not meet these qualifications in 2012 without first undergoing reconstructive surgery on his right shoulder. (Defendant's Exh. A (Carroll Tr.) at 177:19-178:1.) This evidence is sufficient to raise a fact issue as to whether Plaintiff was qualified for the Sergeant position.[9]

---

[9] Although Plaintiff's injuries are a direct result of his military service in Iraq, under USERRA, taking into account injuries sustained as a result of military service is not equivalent to discrimination based on military service. USERRA's reemployment provision and accompanying regulations are instructive on this point. Section 4313

11

As there are genuine issues of material fact as to whether Plaintiff would have been denied the promotion regardless of his military service, summary judgment will be denied.

## IV.

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment will be denied.

An appropriate order accompanies this opinion.

Dated: July 29th, 2014

_____
Joseph E. Irenas, S.U.S.D.J.

---

provides that the employee must be "qualified to perform" his job duties. 38 U.S.C. § 4313; see also 20 C.F.R. § 1002.226 ("USERRA requires that the employee be qualified for the reemployment position regardless of any disability. The employer must make reasonable efforts to help the employee to become qualified to perform the duties of this position. The employer is not required to reemploy the employee on his or her return from service if he or she cannot, after reasonable efforts by the employer, qualify for the appropriate reemployment position.").
    Presently, the limited record before the Court raises questions as to whether any reasonable accommodation could make Plaintiff qualified for the promotion he sought.

12